**CIRCUIT COURT OF THE CITY OF RICHMOND**

O. Tuck Adams

v.

Commonwealth of Virginia,
Department of Corrections

September 29, 1980

Case No. LD 743

By JUDGE MARVIN F. COLE

O. Tuck Adams is an employee in the Finance Division of the Department of Corrections and is classified as Accountant C. In January, 1980, a performance evaluation was made upon him by P. V. Kanitkar, Manager, General Accounting Services Unit to measure his performance. The evaluation can be generally described as unsatisfactory in comparison with those of prior years.

Adams filed a grievance, giving as the nature of the grievance that the performance evaluation was arbitrary and capricious. The relief requested was that the evaluation be upgraded so that he receive a merit increase and removal of the adverse record from his personnel file.

Section 2.1-114.3 of the Code created a Department of Personnel and Training, such Department to be headed by a Director of Personnel and Training.

Section 2.1-114.5 of the Code defines the duties of the Department, a part of them being as follows:

D. Establish and direct a program of employee-management relations designed to improve communications between employees and agencies of the Commonwealth.

E. Establish and administer a system of performance evaluation for all employees in

the service of the Commonwealth, based on the quality of service rendered, related where practicable to specific standards of performance.

H. Establish and administer a program of evaluation of the effectiveness of performance of the personnel activities of the agencies of the Commonwealth.

Section 2.1-114.5.1 of the Code provides that the Department of Personnel and Training, pursuant to Section 2.1-114.5(D), shall establish a grievance procedure and this section then sets out what the grievance procedure shall include.

A copy of the Grievance Procedure as Revised July 1, 1979, is a part of the record before me. The part that is pertinent to this matter is as follows:

## DEFINITION OF GRIEVANCE

A grievance shall be a complaint or dispute of an employee relating to employment, including but not necessarily limited to:

disciplinary actions, including dismissals, demotions and suspensions.

the proper *application* of personnel policies, procedures, rules and regulations, and ordinances and statutes.

acts of reprisal as a result of utilization of the grievance procedure.

complaints of discrimination on the basis of race, color, creed, political affiliation, age, handicap, national origin or sex.

Management reserves the exclusive right to manage the affairs and operations of State government. Accordingly, the following complaints are not *grievable* under this procedure:

establishment and revision of wages or salaries, position classifications or general benefits.

work activity accepted by the employee as a condition of employment or work activity which may reasonably be expected to be a part of the job content (The measurement and assessment of work activity through a performance evaluation shall not be grievable except where the employee can show that the evaluation was arbitrary or capricious).

the *contents* of personnel policies, procedures, rules and regulations, and ordinances and statutes.

failure to be promoted (except where the employee can show established promotional policies or procedures were not followed or applied fairly).

the methods, means and personnel by which such work activities are to be carried on.

termination, lay-off, demotion or suspension from duties because of lack of work, reduction in the work force or job abolition.

the hiring, transfer, assignment and retention of employees within the agency (provided such actions do not constitute disciplinary actions).

the relief of employees from duties of the agency in emergencies.

On July 9, 1979, the Director of Personnel and Training issued Directive No. 18 to All State Agency Heads concerning specifically the Performance Evaluation Policy. It provided as follows:

The measurement and assessment of work activity through a performance evaluation shall not be grievable except where the employee can show that the evaluation was arbitrary or capricious.

Another way to state this directive is that the performance evaluation shall be grievable where the employee can show the evaluation was arbitrary or capricious. Therefore, to determine whether the performance evaluation is grievable or not grievable depends upon whether the finder of facts determines the evaluation to be arbitrary

or capricious. This decision then is one of fact that can only be decided after the facts have been determined.

The Director of the Office of Employee Relations Counselors rendered a letter opinion dated April 30, 1980, in this case in which she states the following:

> The grievance statute and procedure have specifically extracted the performance evaluation from the general non-grievable issues and highlighted the fact that performance evaluations shall *not* be grievable except where the employee can show that the evaluation was arbitrary and capricious.

She then found as a fact that there was a distinct difference of opinion between Adams and the supervisor as to the objectivity and fairness of the evaluation, but she was unable to see the action taken as arbitrary or capricious. Based upon this finding of fact, she ruled that this grievance was non-grievable.

I am of the opinion that the very wording of Directive 18 takes the performance evaluations from the general non-grievable issues and makes them grievable, provided that the finder of facts finds that the action taken was arbitrary or capricious. Therefore, Adams is entitled to proceed to the panel hearing in accordance with the grievance procedure to have the facts ruled upon by the panel. The panel hearing and not this court is the proper forum to determine the facts.